

WWW.RIVKINRADLER.COM

25 Main Street
Court Plaza North, Suite 501
Hackensack, NJ  07601-7082
T 201.287.2460  F 201.489.0495

**NANCY A. DEL PIZZO**
Partner
(201) 287-2472
nancy.delpizzo@rivkin.com

August 18, 2025

**VIA ECF**

Hon. Robert W. Lehrburger, U.S.M.J.
United States District Court for the
Southern District of New York
500 Pearl Street, Room 18D
New York, New York 10007

     Re:    *August Image, LLC v. Complex Media Holdings, LLC et al.*
                No. 24-8433 (PAE) (RWL)

Dear Magistrate Judge Lehrburger:

     We represent defendants, Complex Media, Inc. ("Complex Media"), Commerce Media Holdings, LLC ("Commerce Media"), and BuzzFeed, Inc. ("BuzzFeed") (together, "Defendants"). We write to oppose Plaintiff's letter motion of August 14, 2025 (D.E. 48), which seeks to compel Defendants to produce documents that are wholly irrelevant and not proportional to this matter and/or that Defendants do not have. Further, we write to correct counsel's misstatements, including counsel's misrepresentations about our meet and confer.

     Plaintiff seeks production from each Defendant of all income and profits each ever generated from anything and everything, not just the social media accounts where it is alleged the infringed works appear. That would be like requiring a publisher alleged to have improperly used photographs in one book to produce gross revenues of the entire company, and then be required to prove why all of the unrelated revenues do not apply.  That is not the state of the law nor is supported by Plaintiff's citations, including 17 USC § 504, which provides that only profits "attributable to the infringement" are relevant and proportional. Here, that means profits related to the social media accounts. *Fournier v. Erickson* further proves that point. There, the Court did not hold as Plaintiff states that a defendant must produce all of its gross revenue. Instead, the Court clarified the meaning of "gross revenues" in the context of a copyright action, stating: "The Second Circuit explained that 'gross revenue' as used in this section mean 'gross revenue reasonably related to the infringement, not unrelated revenues.'"  242 F.Supp.2d at 326 (citing *David v. The Gap, Inc*., 246 F.3d 152 (2d Cir. 2001)).

     This matter solely regards nine images that were allegedly posted without authorization on Complex Media's social media Instagram account, and one image that was allegedly posted without authorization on Complex Media's social media X (formerly known as Twitter) account. (D.E. 25-1, Exhibit to First Amended Complaint).  There are no allegations that any works were

66 South Pearl Street, 11th Floor
Albany, NY 12207-1533
T 518.462.3000 F 518.462.4199

1301 Riverplace Boulevard
Jacksonville, FL 32207-9047
T 904.792.8925 F 904.467.3461

477 Madison Avenue
New York, NY 10022-5843
T 212.455.9555 F 212.687.9044

2649 South Road
Poughkeepsie, NY 12601-6843
T 845.473.8100 F 845.473.8777

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000 F 516.357.3333



Hon. Robert W. Lehrburger, U.S.M.J.
August 18, 2025
Page 2 of 3

published without authorization on any "webpages" or "websites." The claims solely regard social media accounts, which Plaintiff knows do not "connect" to any websites, as is plainly evident by Plaintiff's exhibit to the First Amended Complaint, which shows the alleged unauthorized uses on Instagram and X. (D.E. 25-1).

Plaintiff's exhibit to its lawsuit also plainly identifies the date the images appeared (the Instagram posts are dated November 17, 2022, and the X post is dated December 18, 2023). Thus, Plaintiff already has the documents it believes Defendants should be storing somewhere in their files. As it is not a practice of Complex Media to copy its voluminous social media pages and store hundreds of thousands of pages of documents, it cannot produce them because it does not have them. And, Defendant BuzzFeed (parent of Complex Media) also does not print and store social media pages much less of its sister company. Defendant Commerce Media did not even own the social media accounts in 2022 or 2023, so it has no such documents either.

Further, Plaintiff was provided with sworn testimony as to damages. Specifically, Plaintiff's Interrogatory No. 7 asked: "Describe in detail the total gross revenues YOU generated in connection with the SUBJECT PHOTOGRAPHS including but not limited to revenues general through advertising in connection with INFRINGING USES." In their sworn responses to that Interrogatory, among its objections, Complex Media stated that "it has derived no revenues from the social media posts in issue." Further, Complex Media produced the employment statements for the former employees who managed its social media accounts, which demonstrated that its social media accounts operated at negative profits as it was paying employees when it generated no income. That is also reflected in its sworn response to Interrogatory No. 8. (**Exhibit A**). Defendant BuzzFeed (which no longer owns Complex Media's social media assets)[1] responded to No. 7, swearing under oath that it has derived no revenues from the social media posts in issue. And for No. 8, it stated that it "is not the creator or publisher of the alleged use," as those social media accounts were owned and operated by Complex Media. (**Exhibit B**). In response to the same two Interrogatories, Commerce Media's sworn statement to No. 7 noted that it derived no revenues

---

[1] BuzzFeed is a public company, and Plaintiff has access to all publicly available financial documents regarding it (and its sister company, Complex Media). In fact, Plaintiff produced a publicly available release noting that Commerce Media paid BuzzFeed about $108 million in February 2024 for certain assets of Complex Media. Knowing that, Plaintiff still sued Commerce Media, which did not even own the assets in issue at the time of the alleged infringements. Also available publicly is that BuzzFeed acquired Complex Media in fourth quarter 2021 for more than $300 million, thereby selling them less than three years later at a significant loss. Thus, Plaintiff's *belief* that there should be documents showing profits from 10 photographs posted on non-monetized Instagram and X social media accounts is beyond logic and fact. Notably, one can see from Plaintiff's exhibit that at least most of the photographs are reposts from the photographers' own social media accounts. Thus, it is the photographers who freely distributed their works on social media. Plaintiff ignores that fact as it continues to attempt to thwart Defendants' efforts to depose those photographers. (*See* D.E. 47, Plaintiff objects to substituted service when the process server is unable to effectuate service using addresses provided by Plaintiff for photographers on whose behalf it filed this lawsuit).



from the social media sites in issue, and in response to No. 8, it noted, "as publicly reported," that it spent approximately $108 million to acquire Complex Media assets, including its social media accounts, plainly showing an expense, not profits. (**Exhibit C**).

During the parties' meet and confer, Plaintiff's counsel remarked that Defendants had taken the position that none of them owned or operated the social media accounts at the time of the alleged infringements. I expressly told counsel that that was not true, and that in November of 2022 and December of 2023, Complex Media owned and operated the Complex Media social media Instagram and X accounts, and BuzzFeed was Complex Media's parent company at the time. (This also is shown by the asset purchase agreement Defendants produced). I explained to counsel that Defendants had no choice but to deny the applicable Requests for Admissions because Plaintiff defined "You" and "Your" to include the responding party "as well as its members, licensees, partners, related entities, subsidiaries, affiliates, agents, employees, attorneys, accountants, investigators, or anyone else working on its behalf, as well as its insurance companies, their agents, their representations and their employees." (**Exhibit D,** Plaintiff's definitions page).[2] I also told counsel that Defendants deny that they infringed Plaintiff's works so his use of the term "infringing works" also requires denials. Thus, Defendants' response to the requests to admit are accurate. *Counsel said that is not what he meant, but chose not to serve amended Requests to Admit*. Plaintiff's citations to non-binding inapposite California law demonstrates there is no binding legal support for its arguments. Nor do the facts support them.

Finally, Plaintiff's counsel has repeatedly stated during the parties' meet and confers that Defendants have the right to make relevancy objections but must produce whatever Plaintiff seeks and must prepare 30b6 witnesses on whatever topics Plaintiff wants – even if Defendants do not have the requested documents, the requests are not proportional to the matter or on which it would be impossible to prepare a 30b6 witness. Discovery is not a limitless expedition subject only to relevancy objections. No party is entitled to overburden another for discovery of irrelevant information that is not proportional to the needs of the matter. *See Gilead Sciences, Inc. v. Khaim*, 755 F.Supp.3d 285, 297 (E.D.N.Y. 2024) (request not proportional to the needs of the case not discoverable); *see also Sound Around, Inc. v. Friedman*, No. 24-cv-1986, 2025 WL 1531691, at *2 (S.D.N.Y. May 28, 2025) ("The correct course here is not for Plaintiff to fish into every single product Defendants or any of their entities have ever sold").

Accordingly, we ask the Court to deny Plaintiff's motion. We thank the Court for its time and consideration.

> Respectfully submitted,
> **RIVKIN RADLER LLP**
> *s/ Nancy A. Del Pizzo*
> Nancy A. Del Pizzo

c: Counsel of Record (via ECF)
4930-3147-1455, v. 1

---

[2] They are identical for each Defendant; and Requests for Admissions were also referred to as "Interrogatories."